UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INVAS MEDICAL DEVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| ZIMMER BIOMET CMF AND | ) | 3:21-CV-2947-G |
| THORACIC, LLC d/b/a BIOMET | ) | |
| MICROFIXATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court are the motions of the plaintiff InVas Medical Devices, LLC, ("InVas") to remand this case to the 101st District Court, Dallas County, Texas (docket entry 9), and of the defendant Zimmer Biomet CMF and Thoracic, LLC, d/b/a Biomet Microfixation, LLC ("Zimmer Biomet"), to transfer venue of this case to the United States District Court for the Middle District of Florida (docket entry 2). For the reasons set forth below, the motion to remand is denied, and the motion to transfer venue is granted.

I.  BACKGROUND

Denise Dickerson ("Dickerson") works in medical sales, with a focus on cardiovascular products and devices.  Appendix in Support of Plaintiff's Motion to Remand[1] ("Appendix in Support of Motion to Remand") (docket entry 11) at 10; *see also* Brief in Support of Plaintiff's Response to Defendant's Motion to Transfer Venue ("Response to Motion to Transfer Venue") (docket entry 13) at 6.  In 2013, Dickerson formed and registered InVas with the Texas Secretary of State.  Appendix in Support of Motion to Remand at 10.  InVas is a Texas limited liability company with its principal place of business in Denton County, Texas.  Original Petition ("Petition") ¶ 2, *attached to* Notice of Removal ("Notice") (docket entry 1) as Exhibit A.  Dickerson, a Texas citizen, is the sole member of InVas.  Brief in Support of Plaintiff's Motion to Remand ("Motion to Remand") (docket entry 10) at 4.  Thus, InVas is a citizen of Texas for diversity purposes.

---

[1]     In violation of N.D. TEX. CIV. R. 56.6(b)(3) ("Each page of the appendix must be numbered legibly in the lower, right-hand corner."), InVas failed to number the pages of its appendices filed in support of its motion to remand and its response to the defendant's motion to transfer venue.  Thus, when referencing these appendices (docket entries 11, 15), the court cites to the page number generated by ECF at the top of each page.

Zimmer Biomet,[2] a publicly traded medical device company, is a Florida

limited liability company with its principal place of business in Jacksonville, Florida.[3]

Notice ¶ 5; Appendix to Defendant's Reply in Support of its Motion to Transfer

("Appendix in Support of Reply in Support of Motion to Transfer Venue") (docket

entry 19) at App. 004; Petition ¶ 7.  Zimmer Biomet, initially known as Walter

Lorenz Surgical Instruments, has been located in Florida since 1966.  Appendix in

Support of Reply in Support of Motion to Transfer Venue at App. 004-App. 005; see

also *id*. at App. 005 ("In 1992, Biomet, Inc. acquired Walter Lorenz Surgical

Instruments but continued to maintain it as an independent subsidiary with its

---

[2]      Zimmer Biomet asserts that InVas "incorrectly names Zimmer Biomet
CMF and Thoracic, LLC d/b/a Biomet Microfixation, LLC as the Defendant,
inverting the entity name.  The correct entity name is Biomet Microfixation, LLC
d/b/a Zimmer Biomet CMF and Thoracic, LLC, as provided in the December 2020
'Zimmer Biomet CMF&T Distribution Agreement' . . . between the Parties . . . ."
Notice at 1 n.1.  The defendant interchangeably refers to itself as Zimmer Biomet,
ZB CMFT, and Biomet Microfixation, LLC.  See, *e.g.*, Notice, Response to Motion to
Remand.

[3]      Conversely, InVas contends that Zimmer Biomet is "an Indiana
company for all intents and purposes" with its principal place of business in Indiana.
Motion to  Remand at 4; Response to Motion to Transfer Venue at 4.  In reply,
Zimmer Biomet maintains that it "conducts its business from its Jacksonville, Florida
headquarters."  Appendix in Support of Reply in Support of Motion to Transfer
Venue at App. 004; see also *id*. at App. 005 (Zimmer Biomet "has approximately 233
employees in its Jacksonville, Florida headquarters.  From that Florida location, it
runs its core business functions such as manufacturing, marketing, sales, research and
development, human resources, quality control, regulatory compliance, supply chain
management, operations, customer service, distributor services, medical education
and sales training.").  From Florida, Zimmer Biomet also manages its nationwide
distributor network, including management of InVas.  *Id*.

operations and business in Jacksonville, Florida.  In 2015, Zimmer Holdings, Inc.

acquired Biomet, Inc.  Following the 2015 acquisition, [Zimmer Biomet] continued

to maintain its headquarters and operations in Florida and does today.").  Zimmer

Biomet is a subsidiary of Biomet, Inc., an Indiana corporation with its principal place

of business in Warsaw, Indiana.  Notice ¶ 5; Defendant Zimmer Biomet CMF and

Thoracic, LLC's Response in Opposition to Plaintiff's Motion to Remand and Brief in

Support ("Response to Motion to Remand") (docket entry 20) at 6-7.  Biomet, Inc.,

is the sole member of Zimmer Biomet.  Notice ¶ 5; Response to Motion to Remand

at 7.  Thus, Zimmer Biomet is a citizen of Indiana and Florida for diversity purposes.

By letter agreement dated July 5, 2018, Zimmer Biomet hired InVas "to act as

a commissioned sales representative to promote the sale of thoracic products within a

defined territory in Texas."  Petition ¶ 8; see also *id*. ¶ 10; Appendix in Support of

Motion to Remand at 16-37 ("2018 Agreement"); Appendix to Defendant Zimmer

Biomet CMF and Thoracic, LLC's Response in Opposition to Plaintiff's Motion to

Remand ("Appendix in Support of Response to Motion to Remand") (docket entry

21) at App. 005 ("Upon becoming a [Zimmer Biomet] distributor, Dickerson

attended training for [Zimmer Biomet] in Florida.").  The "defined territory" covered

approximately 119 counties in Texas.  Response to Motion to Remand at 7; *see also*

Exhibit B to 2018 Agreement.  The 2018 Agreement contained restrictive covenants

which limited InVas's ability to compete with Zimmer Biomet following termination

of that agreement.  Response to Motion to Remand at 7 (citing 2018 Agreement ¶¶ 7, 8) ("Non-Compete" clause, "No-Hire Covenant" clause).

By subsequent letter agreement dated September 22, 2020, Zimmer Biomet awarded InVas "the right to promote the sale of **CMF Products** . . ." in two Louisiana parishes and 41 Texas counties.  Appendix in Support of Motion to Remand at 39 (emphasis in the original); see also *id*. at 39-55 ("September 2020 Agreement"); Motion to Remand at 7; Response to Motion to Remand at 7.  InVas contends that Zimmer Biomet "unilaterally took away a large portion of Defendant's [sic] sales territory (and livelihood)."  Motion to Remand at 7; *see also* Appendix in Support of Motion to Remand at 11 (Dickerson was "notified that Zimmer Biomet had hired a direct employee, Mario Loiacono, that would be taking over the majority of InVas' sales territory [which] adversely impacted InVas' overall sales and, by extension, commissions.").  InVas asserts that "[a]s a consolation prize for reducing her territory so dramatically, Defendant gave Plaintiff the right to sell undefined CMF Products (craniomaxillofacial) in a 41-county territory in Texas [which] was a mere fraction of the business Defendant divested from Plaintiff."  Motion to Remand at 7; *see also* Petition ¶ 16 ("This agreement was similar to the prior agreement and contained another one-year noncompete provision.  This time, however, the non-solicitation provision restricted Plaintiff from soliciting Defendant's current

customers and any person, corporation or other entity that had any contact with Plaintiff within the last two years.").

On December 28, 2020, the parties executed a new distribution agreement "which altered [Dickerson's] sales territory and gave [Dickerson] the right to sell certain CMF products in addition to [Zimmer Biomet]'s thoracic products."[4] Response to Motion to Remand at 7; *see also* Appendix in Support of Motion to Remand at 57-81 ("December 2020 Agreement").  The December 2020 Agreement "contained two narrowly tailored restrictive covenants barring [Dickerson] from post-employment competition with [Zimmer Biomet] or solicitation of [Zimmer Biomet]'s customers."  Response to Motion to Remand at 8.  The agreement also included a combined choice-of-law and forum-selection clause.  *See* December 2020 Agreement ¶ 24.  The December 2020 Agreement included, in pertinent part, the following provisions.

> In consideration of the mutual promises, conditions, and agreements contained herein, the sufficiency of which is hereby acknowledged, the parties mutually agree as follows:

---

[4]     Dickerson signed the agreement on behalf of InVas.  *See* Appendix in Support of Motion to Remand at 69; see also *id*. ("**Denise Dickerson** acknowledges that he/she (a) has reviewed the terms of the foregoing Agreement, including the non-compete provisions and no-hire covenants contained in Sections 7 and 8, respectively, of this Agreement; and (b) agrees to be bound individually with respect to the terms of Sections 2, 7, 8 and 11 of (and any other provision requiring his/her personal performance under) this Agreement.") (emphasis in the original).

\* \* \*

<u>Non-Compete</u>.  During the Term of this Agreement and for
a period of eighteen (18) months following the termination
of this Agreement by either party, neither Distributor nor
Distributor's Owners, officers, employees, sales associates
or independent contractors, shall, directly or indirectly, on
Distributor's own or on behalf of any other person,
whether as owner, employee, agent, consultant or in
any other capacity, engage in or enter into any
compensation arrangement relating to the manufacture,
distribution, promotion or sale of products which directly
or indirectly compete with the Products or other
musculoskeletal products.  The geographic scope of this
restriction shall be limited to the Territory.  Further,
during the eighteen (18) month post-Term portion of this
restriction, the definition of restricted products shall be
limited to products which compete directly or indirectly
with the Products that Distributor actually promoted or
sold on Company's behalf during the twenty-four (24)
months immediately preceding the date of termination of
this Agreement. . . . Distributor expressly agrees that the
terms of this non-compete provision shall inure to the
benefit of and can be enforced by the successors and
assigns of Company, and that:  (a) a breach of this
non-compete covenant could cause Company irreparable
harm that may not be compensated for by money damages
alone, and (b) this non-compete covenant is reasonable
and protects the legitimate business interests of Company.

\* \* \*

<u>Non-Solicit and No-Hire Covenant</u>.  During the Term of
this Agreement and for a period of eighteen (18) month
[sic] following the termination of this Agreement by either
party, Distributor and Distributor's Personnel shall not,
directly or indirectly, without the prior written consent of
Company:

- 7 -

a.      (i) solicit, contact, or sell any competitive product or service to any current or prospective customers of Company ("***Protected Customers***"); (ii) solicit, contact, or sell any product or service to a Protected Customer that competes with or is similar to any Company Product or service; (iii) divert, entice, or otherwise take away from Company the business of any Protected Customer; or (iv) solicit or induce any vendor, supplier or Protected Customer to terminate or reduce its relationship with Company.  Protected Customers means any of the current or prospective accounts, customers, doctors, hospitals, group purchasing organizations, integrated delivery networks or clients, with whom Distributor or Distributor's Personnel had direct or material contact during the last twenty-four (24) months of Distributor's engagement with Company or about whom Distributor or Distributor's Personnel learned Confidential Information during its representation of Company, including, but not limited to:  (a) any customer that purchased Company Products or services, (b) any prospect that received or requested a proposal to purchase Company Products or services, (c) any affiliate of any such customer or prospect, or (d) any of the individual customer or prospect contacts that Distributor or Distributor's Personnel established, serviced, sold to, attended training or seminars with or learned Confidential Information about; and/or

b.      induce or attempt to induce any individual:  (1) employed or engaged by Company at the time of Distributor's termination, and (2) who has access to or possession of Confidential Information (as defined below), trade secrets, or intellectual property of Company that would give a competitor an unfair advantage or otherwise induce or entice any such individual to terminate his or her employment or engagement with Company.

- 8 -

* * *

Confidential Information.  Distributor recognizes that, because of the nature of Company's business, Distributor and Distributor's organization will, during the Term of this Agreement, become acquainted with Company's customers and will be given access to certain Confidential Information related to Company's customers and to certain other valuable proprietary information of a confidential nature which is developed, compiled and utilized by Company in its business.  Distributor and the members of Distributor's organization, including Distributor's Personnel, shall not, during the term of this Agreement or thereafter, disclose any item of Confidential Information of Company to any third party or use any such item for Distributor's benefit or for the benefit of any third party without the prior written consent of Company, until such time as such Confidential Information shall have properly become known to the general public. For purposes of this Agreement, the term "***Confidential Information***" shall mean and refer to, without limitation:  (a) any information or documentation maintained as confidential or secret, or of a trade secret or confidential nature which is required to be maintained as such for continued success of the business of Company, or (b) any information identifying the customers to whom Company sells its products, including but not limited to product or customer requirements, customer needs, customer idiosyncrasies, customer preferences or practices, pricing information, discount schedules, market strategies and other related information.

* * *

Governing Law and Venue.  This Agreement and the relationship of the parties hereto shall be governed by and construed in accordance with the laws of the State of Florida.  The parties agree that any cause of action arising out of or relating to this Agreement shall be brought exclusively in a U.S. federal or Florida state court located

in Duval County, Florida and each consents to the court's
personal and subject matter jurisdiction.

*Id*. ¶¶ 7, 8, 11, 24 (emphasis in the original).

InVas maintains that the "[f]or the first time, the [December] 2020 Agreement
contained an exhibit that specified Plaintiff's product portfolio of Thoracic and CMF
Products [and] also purported to modify and expand the restrictive covenants that
would survive termination of the parties' relationship."  Petition ¶ 17.  InVas
complains that "[t]he non-compete provision was modified, in part, by now
restricting any competition to a period of eighteen months (instead of twelve
months) and to a territory of 40 Texas counties and 2 Louisiana parishes.  The
non-solicitation provision was expanded to eighteen months as well and purports to
cover an overbroad category of 'Protected Customers.'"  *Id*.; *see also* Response to
Motion to Transfer Venue at 7.  InVas asserts that "the [December] 2020 Agreement
and new non-compete and non-solicitation provisions therein were not supported by
any new consideration of any kind [, and] the [December] 2020 Agreement was only
secured to 'clean up' the deficiencies in the prior 2018 Agreement . . . ."  Petition
¶ 19.

Zimmer Biomet asserts that "[f]rom March 30, 2019 and March 30, 2021,
Dickerson sold at least 214 different [Zimmer Biomet] products to at least 44
Protected Customers."  Response to Motion to Remand at 10.  By letter dated March
1, 2021, Zimmer Biomet notified InVas that Zimmer Biomet planned to terminate

the December 2020 Agreement effective March 30, 2021.[5]  *See* Appendix in Support

of Motion to Remand at 83; see also *id*. ("As a reminder, Zimmer Biomet expects that

you will fully comply with the post-termination restrictive covenants contained

within your Distribution Agreement.  These include, but are not limited to, your

Non-Compete (Paragraph 7), Non-Solicit and Non-Hire (Paragraph 8), and

Confidential Information (Paragraph 11) covenants.").

In September 2021, Zimmer Biomet "learned that Dickerson continued to call

upon known [Zimmer Biomet] customers that her restrictive covenants prohibited

her from soliciting (i.e. 'Protected Customers' under the [December] 2020

Agreement) in an effort to sway such customers to cease doing business with

[Zimmer Biomet] and to begin a business relationship with Dickerson's new supplier,

JACE Medical, LLC ('JACE')."  Appendix in Support of Response to Motion to

Remand at App. 006.  Thereafter, in a cease-and-desist letter addressed to Dickerson

and InVas dated September 30, 2021, Zimmer Biomet addressed "recent activities in

violation your [sic] post-termination obligations to Zimmer Biomet and to confirm

you understand, acknowledge and intend to honor your obligations, as set forth in

the [December 2020 Agreement]."  *See* Appendix in Support of Motion to Remand at

86.  The letter read, in pertinent part, as follows:

---

[5]      "It is agreed and understood that either party may terminate this
Agreement, without cause and for any reason, by giving the other party at least thirty
(30) days' written notice of termination."  December 2020 Agreement ¶ 6 (quoted in
relevant part).

> Zimmer Biomet has received first-hand accounts of you
> engaging in activity that violates your non-competition and
> non-solicitation covenants, by selling or attempting to sell
> JACE Medical products to at least two of your former
> accounts:  (1) Mother of Frances Hospital in Tyler, Texas;
> and (2) Medical City Fort Worth in Fort Worth, TX.
>
> Zimmer Biomet has direct evidence of these violations.
> This conduct is a breach of your contractual obligations to
> Zimmer Biomet and will not be tolerated.  In order to
> resolve this dispute without litigation, you must
> immediately cease these activities and any other activities
> in violation of your post-termination obligations under the
> Agreement.

*Id*. at 87; *see also* Response to Motion to Remand at 11 ("Dickerson made

approximately $100,492.60 in sales to [the Mother of Frances Hospital] account

alone in the two years preceding her Termination."); Appendix in Support of

Response to Motion to Remand at App. 006 ("JACE is direct competitor of [Zimmer

Biomet].").

By letter dated October 22, 2021, counsel for Dickerson and InVas informed

counsel for Zimmer Biomet that Dickerson and InVas would not cease any

complained of activities.  *See generally* Appendix in Support of Response to Motion to

Remand at App. 024-App. 026.  That same day, October 22, 2021, InVas filed this

declaratory judgment action against Zimmer Biomet in the 101st District Court,

Dallas County, Texas.  *See generally* Petition.  InVas seeks a determination that two of

the December 2020 Agreement's restrictive covenants are void under Texas law, as

well as attorney's fees and costs.  *Id*. at 5-6 ("Plaintiff seeks a declaration that:  [t]he

- 12 -

restrictive covenants (namely, the non-compete and non-solicit provisions) in the [December] 2020 Agreement are unenforceable. . . . In the alternative, that these restrictive covenants, if enforceable, are overbroad.")  InVas asserts that "[a]ll or a substantial part of the events or omissions giving rise to this suit, and any potential counterclaim of Defendant, occurred in Texas."  Response to Motion to Transfer Venue at 6 (emphasis omitted).

On November 23, 2021, Zimmer Biomet removed the case to this court on the basis of diversity-of-citizenship jurisdiction, *see* Notice ¶ 3, and filed a motion under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a) ("§ 1404 (a)") seeking transfer of the case to the United States District Court for the Middle District of Florida, Jacksonville Division, *see generally* Brief in Support of Motion to Transfer Venue ("Motion to Transfer Venue") (docket entry 3).  Specifically, Zimmer Biomet contends that transfer is appropriate because "the [December 2020] Agreement contains a mandatory choice-of-law and forum selection clause requiring any lawsuit relating to the Agreement to be venued in a U.S. federal or Florida state court located in Duval County, Florida – the principal location of Zimmer Biomet's business."  Motion to Transfer Venue at 1; see also *id*. at 2 ("Despite [a] mandatory choice-of-law and venue provision, InVas sued Zimmer Biomet in the 101st District Court, Dallas County, Texas . . . .").  Zimmer Biomet further maintains "[t]he vast majority (if not all) of [its] dealings with Plaintiff related to Dickerson's distributor

agreements, from negotiation to termination, occurred from Florida."  Appendix in Support of Reply to Motion to Transfer at App. 005.

On December 14, 2021, InVas responded to Zimmer Biomet's motion to transfer venue and moved to remand this case to the state district court from which it was previously removed.  *See generally* Response to Motion to Transfer Venue; Motion to Remand.  InVas maintains that (1) "Texas a [sic] has a materially greater interest in this case than does Florida and public policy issues to protect[,]" Response to Motion to Transfer Venue at 1, and (2) "this Court is without jurisdiction to hear this action because Defendant has not established diversity and the amount in controversy, exclusive of interest and costs, is not greater than $75,000[,]"  Motion to Remand at 1.  InVas further asserts that it "has no meaningful business contacts with Florida."  Response to Motion to Transfer Venue at 6.

In its motion to transfer venue, Zimmer Biomet avers that it "intends to file its own claim against InVas for violating its restrictive covenants by selling or attempting to sell to at least two of the accounts it serviced while it was a distributor for Zimmer Biomet."  Motion to Transfer Venue at 5.  However, as InVas notes, "[t]o date, Defendant has not filed a counterclaim and Plaintiff's request for declaratory relief remains the only claim at issue in this case."  Plaintiff's Reply in Support of its Motion to Remand ("Reply in Support of Motion to Remand") (docket entry 24) at 2.

II. <u>ANALYSIS</u>[6]

A. <u>Motion to Remand</u>

1. *Legal Standard*

Title 28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court." *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993) (citing 28 U.S.C. § 1441). However, the removal statute must be strictly construed because "removal jurisdiction raises significant federalism concerns." *Willy v. Costal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Therefore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100,

---

[6]    InVas argues that because its "pending motion [to remand] affects whether this Court or a transferring court can even hear this case, Plaintiff's motion to remand should be considered first." Response to Motion to Transfer Venue at 1. However, while the court could entertain a motion to transfer venue pursuant to § 1404(a) before a motion to remand, see *McCormick v. Payne*, No. 3:15-CV-2729-M, 2015 WL 7424772, at *1-*2 (N.D. Tex. Nov. 23, 2015) (Lynn, J.), the court elects to first determine whether this is one of the limited class of cases over which it has authority.  See *Oldham v. Nationwide Insurance Company of America*, No. 3:14-CV-0575-B, 2014 WL 3855238, at *4 (N.D. Tex. Aug. 5, 2014) (Boyle, J.); *Sharpe v. Zimmer, Inc.*, No. 09-3018, 2009 WL 10690660, at *2 (E.D. La. May 1, 2009) ("The Court first considers plaintiffs' motion to remand, as the assurance of its own jurisdiction is plainly a prerequisite to considering [defendant]'s motion to transfer.").

108-09 (1941).  The party seeking removal bears the burden of establishing federal jurisdiction.  *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal jurisdiction:  the existence of a federal question, *see* 28 U.S.C. § 1331, and complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332.  Here, Zimmer Biomet has alleged only diversity of citizenship as a basis of this court's jurisdiction. *See* Notice ¶ 3.  The court can properly exercise jurisdiction on the basis of diversity of citizenship after removal only if three requirements are met:  (1) the parties are of completely diverse citizenship, *see* 28 U.S.C. § 1332(a); (2) none of the properly joined defendants is a citizen of the state in which the case is brought, *see* 28 U.S.C. § 1441(b)(2); and (3) the case involves an amount in controversy of more than $75,000, *see* 28 U.S.C. § 1332(a).  Because the court finds that the citizenship of the parties is diverse, the only issue before the court is whether the amount in controversy exceeds $75,000, exclusive of interest and costs.

When a defendant seeks removal on the basis of diversity jurisdiction, the federal court generally determines the amount in controversy based on the specific, "good faith" sum demanded by the plaintiff in its state court petition "except that . . . the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief . . . ."  *See* 28 U.S.C. § 1446(c)(2).  Applying the "facially apparent" standard, the court begins by "look[ing] only at the face of the

- 16 -

complaint and ask[ing] whether the amount in controversy [is] likely to exceed [$75,000]." *Allen v. R & H Oil & Gas Company*, 63 F.3d 1326, 1336 (5th Cir. 1995). The court makes the amount in controversy determination "'not [by] proof of the amount the plaintiff will recover' but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Durbois v. Deutsche Bank National Trust Company, as Indenture Trustee, for the Benefit of the Holders of AAMES Mortgage Investment Trust 20054 Mortgage Backed Notes*, 37 F.4th 1053, 1057 (5th Cir. 2022) (quoting *McPhail v. Deere & Company*, 529 F.3d 947, 956 (10th Cir. 2008)).

However, to establish jurisdiction when the plaintiff's state court petition does not allege a specific amount of damages, as in the instant case, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (per curiam) ("[T]he party invoking federal diversity jurisdiction . . . bears the burden of establishing the amount in controversy by a preponderance of the evidence."); *Allen*, 63 F.3d at 1335 (citing *De Aguilar v. Boeing Company*, 11 F.3d 55, 58 (5th Cir. 1993)); 28 U.S.C. § 1446(c)(2)(B).  If the amount in controversy is not apparent from the face of the petition, the court may rely on facts asserted in the removal notice or in an affidavit submitted by the removing defendant to support a finding of the requisite amount.[7]  See *Allen*, 63 F.3d at 1335.

---

[7]      While the court may consider a post-removal affidavit in determining the amount in controversy at the time of removal, it only may consider such an

(continued...)

The court will consider an affidavit submitted by the defendant as further evidence of the amount in controversy, provided that it offers more than conclusory allegations. See *id*. (citation omitted). "[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed" the jurisdictional threshold. *De Aguilar v. Boeing Company*, 47 F.3d 1404, 1412 (5th Cir.), *cert. denied sub nom*. 516 U.S. 865 (1995), *superseded by statute on other grounds*, *Durbois*, 37 F.4th at 1059 ("[The defendant] ignores that [Texas Rule of Civil Procedure 47] was amended in 2013 – after *De Aguilar* [*v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)]."); see also *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 82 (2014) ("In the event that the plaintiff does contest the defendant's [amount-in-controversy] allegations, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied . . . .").

"In an action for declaratory relief, the amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford Insurance Group*, 293 F.3d at 910 (quoting *Leininger v. Leininger*, 705 F.2d 727, 729

---

[7](...continued)

affidavit if the basis for diversity jurisdiction is ambiguous at the time of removal. *Perritt v. Westlake Vinyls Company, L.P.*, 562 Fed. Appx. 228, 232 n.2 (5th Cir. 2014) (per curiam) (citations omitted).

(5th Cir. 1983) (per curiam)); accord *St. Paul Reinsurance Company, Ltd. v. Greenberg*,

134 F.3d 1250, 1252-53 (5th Cir. 1998); see also *Farkas v. GMAC Mortgage, L.L.C.*,

737 F.3d 338, 341 (5th Cir. 2013) (per curiam) ("'In actions seeking declaratory or

injunctive relief, it is well established that the amount in controversy is measured by

the value of the object of the litigation.'") (quoting *Hunt v. Washington State Apple

Advertising Commission*, 432 U.S. 333, 347 (1977)), *cert. denied*, 574 U.S. 875 (2014)).

Based upon the relevant facts at the time of removal, the "value of the right to be

protected" in InVas's viewpoint is the value of the invalidation of restrictive

covenants contained in the December 2020 Agreement – *i.e.*, InVas's rights to sell

competitive products and to solicit Zimmer Biomet customers free from the

interference of others for a defined period of time.  See *Hartford*, 293 F.3d at 910; see

also *Birk v. Hub International Southwest Agency, Ltd.*, No. EP-08-CA-259-FM, 2008 WL

4372694, at *3 (W.D. Tex. Sep. 11, 2008).

## 2. *Application*

InVas's state court petition did not specify an amount of damages; in fact, it

does not seek direct monetary relief of any kind.  *See generally* Petition; *see also* Motion

to Remand at 1.  While the value of InVas's declaratory relief is unclear, it is not

"facially apparent" from its petition that the amount in controversy exceeds $75,000.

InVas maintains that because it only received $1,906.40 in commissions since

Zimmer Biomet terminated the December 2020 Agreement, Zimmer Biomet cannot

meet the $75,000 threshold.  Motion to Remand at 15; Appendix in Support of

Motion to Remand at 14.  The burden, therefore, falls on Zimmer Biomet to prove

by a preponderance of the evidence that the amount in controversy exceeds $75,000

to establish jurisdiction.

Accordingly, the court turns to the notice of removal and the declarations of

Philip Lewis ("Lewis"), Zimmer Biomet's Vice President of Sales for the Americas, to

determine if Zimmer Biomet set forth sufficient facts to support a finding that the

amount in controversy in this case is satisfied.  Zimmer Biomet alleges that the

amount in controversy requirement is satisfied because "[t]he non-competition

provision prohibits Dickerson from selling products that compete directly or

indirectly with the [Zimmer Biomet]'s products Dickerson sold or promoted during

the 24 months prior to termination within the defined Territory for 18 months."

Response to Motion to Remand at 16-17 (citing December 2020 Agreement ¶ 7).  In

addition, Zimmer Biomet notes that "the non-solicitation provision prevents

Dickerson from soliciting [Zimmer Biomet]'s Protected Customers for 18 months

following termination, which includes any customers with whom Dickerson had

direct contact with or learned Confidential Information about during the last **24**

**months** of InVas's engagement with [Zimmer Biomet].  *Id*. at 17 (citing December

2020 Agreement ¶ 8(a)) (emphasis in the original)).  As a result, Zimmer Biomet

argues, "contrary to Dickerson's assertions, the totality of her two-year sales

history is relevant to determining the value of her restrictive covenants.  Should the Court invalidate the covenants, Dickerson would be free to compete with [Zimmer Biomet] not only inside her 2020 Territory, but also to solicit any Protected Customer to whom she previously sold [Zimmer Biomet] products that are otherwise outside that Territory."  *Id*.

In its notice of removal, Zimmer Biomet avers that "[t]he amount in controversy exceeds $75,000, exclusive of interest and costs" as InVas "generated approximately $666,108.75 in sales" [, and] Zimmer Biomet "paid Plaintiff approximately $146,261.61 in commissions and other payments" for fiscal year 2020 within the territory outlined in the December 2020 Agreement.  Notice ¶ 6; see also *id*. at 3 n.3 ("[For fiscal year 2020,] amounts are lower than previous years due to the COVID-19 pandemic.").

Zimmer Biomet attached a declaration of Lewis to its notice of removal in support of its contention that the amount in controversy in this case exceeds $75,000.  *See generally* Declaration of Philip Lewis ("Lewis Declaration"), *attached to* Notice as Exhibit C.  Lewis declared, in pertinent part, as follows:

> For fiscal year 2020, Plaintiff generated approximately $666,108.75 in sales in that territory.  For those efforts, Zimmer Biomet paid Plaintiff approximately $146,261.61 in commissions and other payments. . . .
>
> Plaintiff is now requesting a declaratory judgment that the 18-month non-competition and non-solicitation restrictive covenants provided in the December 2020 Agreement are unenforceable or overbroad.  The relief requested by

> Plaintiff would provide a competitive advantage of
> approximately $1,000,000 in sales and $220,000 in
> commissions to Plaintiff and any Zimmer Biomet
> competitor that Plaintiff represents in its former Zimmer
> Biomet territory.

*Id*. ¶¶ 4, 5.

InVas objects to Lewis's declaration as "fundamentally flawed[.]"  Motion to Remand at 12.  For example, InVas asserts that "[i]t is highly unlikely and not credible that Mr. Lewis has personal knowledge of the figures cited without having to refer to business records, which he did not attach to his declaration as required by Rule 56(e) of the Federal Rules of Civil Procedure."  *Id*. at 13-14; see also *id*. at 14 ("The only inference that can be made from Mr. Lewis' declaration is that Plaintiff somehow has a competitive advantage merely because Plaintiff was previously a distributor for Defendant (*i.e.*, an independent sales contractor).").

In response, *see* Appendix in Support of Response to Motion to Remand at App. 007 ("In her Brief in Support of Plaintiff's Motion to Remand, Dickerson challenged . . . information as 'unsubstantiated.'"), Zimmer Biomet filed a supplemental declaration.  See generally *id*. at App. 004-App. 022.  As evidence of the amount in controversy at issue, Lewis's supplemental declaration included "a summary of payments made to Dickerson during the 24 months prior to her termination[,] . . . a spreadsheet listing the [Zimmer Biomet] products Dickerson sold during the 24 months prior to her termination [, and] a spreadsheet showing to which [Zimmer Biomet] customers Dickerson made sales in the 24 months prior to

her termination and the total amount of those sales."[8]  See *id*. at App. 007; see also

*id*. at App. 011-App. 014 (Sales and Commissions Payments Summary), App.

016-App. 020 (Products List), App. 022 (Accounts with Sales Summary).  Zimmer

Biomet alleges that the amount in controversy is satisfied by "testimony and

supporting documentation that the court may reasonably infer the value of

---

[8]        Lewis described these documents, in relevant part, as follows:

> The Products List and Accounts with Sales
> Summary shows that Dickerson sold at least
> 214 different [Zimmer Biomet] products to at
> least 44 Protected Customers. . . .  This list
> does not contain [Zimmer Biomet] customers
> that Dickerson may have had material
> contact with or learned confidential about,
> but to whom Dickerson had not yet
> completed a sale. . . .

> The Sales and Commissions Payments
> Summary demonstrates that these sales to
> Protected Customers in the 24 months prior
> to Dickerson's termination generated at least
> $1,427,926.36 in net sales, $285,144.30 in
> commissions to Dickerson, and $375,815.10
> in net pay to Dickerson. . . .

> * * *

> Alternatively, the data on the Sales and
> Commissions Payment Summary indicates
> that in the 18-months prior to her
> termination, Dickerson generated
> $973,150.09 in net sales, made $194,189.05
> in commissions, and received $255,069.92 in
> net pay. . . .

Appendix in Support of Response to Motion to Remand at App. 007-App. 008.

Dickerson's restrictive covenants over an 18-month period based on her previous net sales, commissions earned, and net pay would be approximately $1,070,944.77, $213,858,23, and $281,861.33 respectively."  Response to Motion to Remand at 5.

In reply, InVas generally argues that "[sales] numbers and the Supplemental Declaration of Philip Lewis cannot be reasonably inferred, grossly exaggerate the amount in controversy, and are misleading."  Reply in Support of Motion to Remand at 5.  InVas further avers that Zimmer Biomet "has not alleged or provided any evidentiary support that any competition by Plaintiff has impacted its sales, profits, or business in any way."  *Id*. at 2; see also *id*. at 7.

The court finds that the value of the right to be protected by InVas's declaratory judgment action probably exceeds $75,000, exclusive of interest and costs.  See *ECL Group, LLC v. Mass*, No. 3:17-CV-2399-D, 2018 WL 949235, at *4 (N.D. Tex. Feb. 20, 2018) (Fitzwater, J.) ("In the case of injunction against uncertain sales activity, courts typically look to 'the profits earned by the employer on business generated by the employee during the period immediately preceding his termination.'") (citing 14AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3708 (4th ed. 2016) (citing *Zep Manufacturing Corporation v. Haber*, 202 F. Supp. 847 (S.D. Tex. 1962)); *Brand Energy Solutions, LLC v. Rakocy*, No. 16-13990, 2016 WL 7476221, at *3 (E.D. La. Dec. 29, 2016). Zimmer Biomet has established by a preponderance of evidence that the amount in controversy exceeds $75,000, and InVas has not shown "to a legal certainty" that its

recovery will fall at or below the jurisdictional minimum.  Thus, under the Fifth
Circuit's standards for removal cases, the minimum amount in controversy for the
exercise of subject matter jurisdiction has been met, and complete diversity of
citizenship exists.  Accordingly, the court has subject matter jurisdiction over this
action, and InVas's motion to remand is denied.

## B.  Motion to Transfer Venue

Because the court is satisfied that it has subject matter jurisdiction in this
matter, it next must consider Zimmer Biomet's motion to transfer this case to the
United States District Court for the Middle District of Florida.  *See generally* Motion
to Transfer.  According to Zimmer Biomet, the language in paragraph 24 of the
December 2020 Agreement constitutes a mandatory, valid, and enforceable
choice-of-law and forum-selection clause.  *Id.*  Zimmer Biomet asserts that"[i]n hiring
InVas as a distributor, Zimmer Biomet contracted for choice-of-law and venue in
Florida – the location of its principal office. . . . Zimmer Biomet is entitled to the
benefit of that bargain and, therefore, this matter should be transferred to the United
States District Court for the Middle District of Florida, Jacksonville Division." *Id.* at
5.  In Zimmer Biomet's view, InVas "fails to meet [its] heavy burden to show that the
Parties' agreed-upon forum selection clause is unreasonable [and] also fails to show
the Parties' choice-of-law clause has no reasonable relationship to the dispute, that
Texas has a materially greater interest, or that the application would contravene
Texas public policy."  Defendant's Reply in Support of its Motion to Transfer

("Reply in Support of Motion to Transfer Venue") (docket entry 18) at 1.  Zimmer

Biomet further maintains that it "has an interest in having its restrictive covenants

interpreted consistently pursuant to the Florida choice-of-law provision contained in

its distributor agreements throughout its nationwide distributor network . . . [and]

relies on these choice-of-law provisions to help ensure that there is uniformity,

certainty, and predictability in the application of the restrictive covenants in its

distribution agreements with distributors across the country."  Appendix in Support

of Reply to Motion to Transfer Venue at App. 005-App. 006.  Conversely, InVas

contends that Zimmer Biomet's "requirement to have Plaintiff (or any other

non-Floridian resident) file suit and seek redress in Florida courts and apply Florida

law is an example of forum shopping, which should not prevail where Texas a [sic]

has a materially greater interest in this case than does Florida and public policy issues

to protect."  Response to Motion to Transfer Venue at 1; see also *id*. at 8 ("Venue is

proper in Texas because it's the location of all the actions and events that give rise to

this suit or any compulsory counterclaim or crossclaim, its where key witnesses are

located, including third parties that Defendant cannot subpoena or otherwise compel

to testify in Florida, and Defendant's non-compete agreement and choice of law

provision offend Texas public policy.").

1. *Legal Standard:*
*The Interplay Between § 1404(a) and Forum-Selection Clauses*

To consider Zimmer Biomet's motion to transfer venue, the court must turn to the question of whether the forum-selection clause contained in the December 2020 Agreement is mandatory or permissive, valid, covers the scope of claims in dispute, and is enforceable.  See generally *OKTEX Utility Construction, Inc. v. MasTec North America, Inc.*, No. 3:21-CV-2551-B, 2022 WL 785315 (N.D. Tex. Mar. 15, 2022) (Boyle, J.).  "The Fifth Circuit recently made clear that although federal law governs the *enforceability* of forum selection clauses, it does not govern *interpretation* of such clauses."[9] *DBS Solutions LLC v. InfoVista Corporation*, No. 3:15-CV-3875-M, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016) (Lynn, Chief J.) (emphasis in the original) (citing *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 770 (5th Cir. 2016)).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system . . . ."  *Atlantic Marine*

─────────────

[9]     State law governs interpretation of forum-selection clauses.  *KeyCity Capital, LLC v. Davenport Investments, LLC*, No. 3:21-CV-2046-D, 2022 WL 581146, at *4 n.12 (N.D. Tex. Feb. 25, 2022) (Fitzwater, J.) (citations omitted).

*Construction Company, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013).

The Fifth Circuit has held that "*Atlantic Marine* [, 571 U.S. 49 (2013)]. . . clarified the proper mechanism for enforcing [forum-selection clauses] . . . [and] announced the effect that a mandatory and enforceable [forum-selection clause] should have on the § 1404(a) and [forum-selection clause] analyses." *Weber*, 811 F.3d at 766 (citation omitted). The presence of a mandatory, valid, and enforceable forum-selection clause in the parties' contract "dramatically alters" the § 1404(a) analysis. *Id*. at 767; see also *Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215, 222 (5th Cir. 2020) ("Importantly, this analysis presupposes that the forum-selection clause is valid and that the relevant dispute falls within its scope."). Under the *Atlantic Marine* framework, the court's § 1404(a) analysis is altered in three ways.

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.
>
> * * *
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.
>
> * * *
>
> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in

> some circumstances may affect public-interest
> considerations.

*Atlantic Marine*, 571 U.S. at 63-64; *see also id*. at 65 ("[A] plaintiff who files suit in

violation of a forum-selection clause enjoys no such 'privilege' with respect to its

choice of forum, and therefore it is entitled to no concomitant 'state-law advantages.'

Not only would it be inequitable to allow the plaintiff to fasten its choice of

substantive law to the venue transfer, but it would also encourage gamesmanship.").

In sum, when a court considers whether to transfer a case pursuant to a

§ 1404(a) motion, and the contract governing the parties' dispute contains a

forum-selection clause, the analysis proceeds as follows.  First, the court's threshold

consideration in any § 1404(a) analysis is whether the civil action might have been

brought in the transferee court.[10]  *In re Volkswagen of America, Inc*., 545 F.3d 304, 312

(5th Cir. 2008) (en banc), *cert. denied sub nom*. 555 U.S. 1172 (2009).  Second,

assuming the court decides that threshold question in the affirmative, the court then

evaluates whether the clause in question is mandatory or permissive, applying

principles of contract law as necessary.  See *Weber*, 811 F.3d at 768; *LeBlanc v. C.R.

England, Inc*., 961 F. Supp. 2d 819, 828 (N.D. Tex. 2013) (Boyle, J.) (citation

omitted).  The court also must determine if the clause is valid and whether the

---

[10]     The court answers this preliminary inquiry in the affirmative as this case
could have been brought in the United States District Court for the Middle District
of Florida, Jacksonville Division.  *See* 28 U.S.C. § 1391(b).

dispute falls within the scope of the clause.  See generally *OKTEX Utility Construction*, 2022 WL 785315.  Third, if the court concludes that the forum-selection clause is mandatory, valid, and the claims are within the scope of the clause, then the clause is presumptively enforceable and, to prevent transfer, the party opposed to the motion must meet its "heavy burden" to demonstrate that enforcement of the clause would be unreasonable under the circumstances.  See *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (per curiam).  Finally, the court considers public-interest factors[11] and any exceptional circumstances that might weigh in favor of denying a transfer of venue notwithstanding a valid, enforceable forum-selection clause.

### 2.  *Application*

#### a.  The Choice-of-Law and Forum-Selection Clause

As previously noted, the December 2020 Agreement between InVas and Zimmer Biomet contains the following provision:

> Governing Law and Venue.  This Agreement and the relationship of the parties hereto shall be governed by and construed in accordance with the laws of the State of Florida.  The parties agree that any cause of action arising

---

[11]     These public-interest factors include:  "'administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'"  *Weber*, 811 F.3d at 776 (quoting *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotations omitted)).

out of or relating to this Agreement shall be brought
exclusively in a U.S. federal or Florida state court located
in Duval County, Florida and each consents to the court's
personal and subject matter jurisdiction.

December 2020 Agreement ¶ 24.

### b. Interpretation

#### i. Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in
which it sits. *Resolution Trust Corporation v. Northpark Joint Venture*, 958 F.2d 1313,
1318 (5th Cir. 1992) (citing *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487,
496 (1941)), *cert. denied sub nom.* 506 U.S. 1048 (1993). As a federal court sitting in
diversity, this court will apply Texas choice-of-law rules. *Weber*, 811 F.3d at 769; see
also *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam) ("[T]he
conflict-of-laws rules to be applied by a federal court in Texas must conform to those
prevailing in the Texas state courts."); *Fintech Fund*, 836 Fed. Appx. at 223. Thus, the
court will apply Texas choice-of-law rules to "determine which substantive law
governs the interpretation of the [December 2020 Agreement's forum-selection clause
and] apply that substantive law to the language of the [forum-selection clause] to
decide whether it is mandatory or permissive." *Weber*, 811 F.3d at 769.

"Texas courts 'permit choice-of-law agreements and the default position is that
they are enforceable.'" *KeyCity Capital*, 2022 WL 581146, at *4 (quoting *Cardoni v.
Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015)); see also *In re AutoNation, Inc.*,

228 S.W.3d 663, 670 (Tex. 2007) ("[W]e will not presume to tell the forty-nine

other states that they cannot hear a non-compete case involving a Texas

resident-employee and decide what law applies, particularly where the parties

voluntarily agree to litigate enforceability disputes there and not here.  Our holding

today rests squarely on the parties' contractual commitment, but it carries the

concomitant benefit of extending comity to the Florida courts.").  Accordingly, Texas

law would control only if the December 2020 Agreement's choice-of-law clause is

itself unenforceable.  See *Barnett v. DynCorp International, L.L.C.*, 831 F.3d 296, 304

(5th Cir. 2016); see also *id*. at 305 ("[T]o render the Agreement's choice-of-law

provision unenforceable, [the plaintiff] must satisfy Section 187(2) of the

Restatement [(Second) of Conflict of Laws].").

Texas has adopted the conflicts of law provisions of the RESTATEMENT

(SECOND) OF CONFLICTS OF LAW ("the Restatement").  *Cardoni*, 805 F.3d at 581;

*Exxon Mobil Corporation v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014).  Section 187

of the Restatement outlines an approach to evaluating contractual choice-of-law

provisions and generally favors applying the parties' chosen law.  The Restatement

reads, in pertinent part, as follows:

> (1) The law of the state chosen by the parties to govern
> their contractual rights and duties will be applied if the
> particular issue is one which the parties could have
> resolved by an explicit provision in their agreement
> directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187; see also *Realogy Holdings Corporation v. Jongebloed*, 957 F.3d 523, 532 (5th Cir. 2020) ("Texas law recognizes the 'party autonomy rule' that parties can agree to be governed by the law of another state. . . . [though] contractual choice-of-law provisions are not 'unassailable' under Texas law.") (citations omitted); TEX. BUS. & COM. CODE § 1.301(a) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties."); *id*. § 15.50.

While the December 2020 Agreement contains a general choice-of-law provision designating Florida state law as the governing body of law, InVas argues that the choice-of-law and forum-selection clause here is invalid as "Florida choice of

law has no reasonable or substantial relationship to the instant dispute and Texas has a materially greater interest in this matter than does Florida." Response to Motion to Transfer Venue at 12. If the court disagrees and finds that a substantial relationship or reasonable basis exists with regard to the parties' choice of Florida law, to negate the contractual choice-of-law provision, InVas must fit within the exception provided by § 187(2)(b) of the Restatement. If the court finds that neither exception applies, then the parties' choice of Florida law will control the court's interpretation of the forum-selection clause – *i.e.*, "whether it is mandatory or permissive, valid, and the claims are within the scope of the clause." *KeyCity Capital*, 2022 WL 581146, at *4 n.12.

In Vas asserts that "[i]n the area of restrictive covenants, Florida law substantially conflicts with Texas law and Florida law violates Texas' strong public policy concerns." Response to Motion to Transfer Venue at 11; see also *id*. at 12 ("The forum selection clause in the [December] 2020 Agreement, when combined with the purported choice-of-law clause, deprives Plaintiff of its remedy to have the [December] 2020 Agreement declared void and unenforceable, under Texas law, for not being supported by any consideration."). Specifically, InVas maintains that "[c]ontinued employment, absent an ancillary agreement, is not sufficient consideration for a non-compete agreement in Texas . . . [, and] Florida . . . appears to allow [it]." *Id*. at 11. Zimmer Biomet avers that InVas's "argument of a lack of consideration is absolutely without merit as Dickerson was paid significant

- 34 -

commissions and given access to [Zimmer Biomet]'s confidential information and customer goodwill in exchange for her agreement to be bound by the restrictive covenants." Reply in Support of Motion to Transfer Venue at 6. In support of its public policy arguments, InVas relies on *Light v. Centel Cellular Company of Texas*, 883 S.W.2d 642 (Tex. 1994), *see* Response to Motion to Transfer Venue at 11, a decision abrogated by *Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011); see *Marsh*, 354 S.W.3d at 775 ("*Light*'s requirement is contrary to the language of the Act [*i.e.*, TEX. BUS. & COM. CODE § 15.50(a)]; thwarts the purpose of the Act, which was to expand rather than restrict the enforceability of such covenants; and contradicts the Act's intent to return Texas law on the enforceability of noncompete agreements to the common law . . . .").

The court finds that enforcement of the clause would not contravene public policy in Texas. See *Marsh*, 354 S.W.3d at 775 ("Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus; and there is no textual basis for excluding the protection of much of goodwill from the business interests that a noncompete may protect."); see also *id.* at 778 ("We hold that if the relationship between the otherwise enforceable agreement and the legitimate interest being protected is reasonable, the covenant is not void on that ground."); *Jordan Khan Music Company, LLC v. Taglioli*, No. 4:21-CV-0045, 2022 WL 3268507, at *2 (E.D. Tex. Aug. 10, 2022) ("When determining the enforceability of a covenant, a court

should not focus on 'overly technical disputes' with regard to the ancillary nature of the noncompete to an agreement.") (citing *Marsh*, 354 S.W.3d at 777); *Sunbelt Rentals, Inc. v. Holley*, No. 3:21-CV-3241-N, 2022 WL 827126, at *4 (N.D. Tex. Mar. 18, 2022) (Godbey, J.).  Moreover, as previously noted, Texas law favors the enforceability of covenants not to compete and the enforceability of valid contracts. TEX. BUS. & COM. CODE  § 15.50; *Marsh*, 354 S.W.3d at 771; *Courtroom Sciences, Inc. v. Andrews*, No. 3:09-CV-0251-O, 2009 WL 1313274, at *15-*16 (N.D. Tex. May 11, 2009) (O'Connor, J.); see also *Drennen*, 452 S.W.3d at 324-27. Additionally, InVas has not demonstrated that Texas has a materially greater interest than Florida in the outcome of this litigation.

The court finds that neither Restatement § 187(2) exception applies as it appears that Florida has a "substantial relationship" to the parties and the December 2020 Agreement, and a "reasonable basis" exists with regard to the parties' choice of Florida law.  See *Cardoni*, 805 F.3d at 581-82; see also *Drennen*, 452 S.W.3d at 325. Furthermore, it does not appear that the application of Florida law "'would be [1] contrary to a fundamental policy of a state [2] which has a materially greater interest than the chosen state in the determination of the particular issue and [3] which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'"  See *Barnett*, 831 F.3d at 305 (quoting Restatement § 187(2)).  The December 2020 Agreement provides that Florida law

governs the contract.  *See* December 2020 Agreement ¶ 24.  The court will honor that choice and apply Florida law.  See *Weber*, 811 F.3d at 769-70; see also *Drennen*, 452 S.W.3d at 329-30.  Accordingly, the court will use Florida law to interpret whether the forum-selection clause is (1) mandatory or permissive, (2) valid, and (3) whether the forum-selection clause applies to InVas's claims for declaratory relief.  See *OKTEX Utility Construction*, 2022 WL 785315, at *4.

### ii.  *Mandatory Versus Permissive*

Before determining whether a forum-selection clause should be enforced, the court must determine whether the clause is mandatory or permissive.  *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).  While Zimmer Biomet characterizes the forum-selection clause at issue as mandatory, *see* Motion to Transfer at 2, InVas failed to raise or brief this issue.

A mandatory forum-selection clause provides that all litigation must be conducted in a specified forum.  *Weber*, 811 F.3d at 768 ("A [forum-selection clause] is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum – and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make [a forum-selection clause] mandatory.") (emphasis in the original, citation omitted).  Mandatory forum-selection clauses "'must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that

jurisdiction exclusive.'" *LeBlanc*, 961 F. Supp. 2d at 828 (quoting *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009), *cert. denied*, 559 U.S. 971 (2010) (quoting *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005)).

"Under Florida law, a forum-selection clause is mandatory if it provides that 'suit may be filed only in the forum named in the clause[]' [as] [s]uch a clause contains 'words of exclusivity.'" *OKTEX Utility Construction*, 2022 WL 785315, at *4 (quoting *Michaluk v. Credorax (USA), Inc.*, 164 So. 3d 719, 722 (Fla. Dist. Ct. App. 2015)); see also *Espresso Disposition Corp. 1 v. Santana Sales & Marketing Group, Inc.*, 105 So. 3d 592, 595 (Fla. Dist. Ct. App. 2013) ("[A forum-selection] clause is mandatory where the plain language used by the parties indicates 'exclusivity.'") (citation omitted).  By contrast, although permissive forum-selection clauses authorize venue in a designated forum, they do not prohibit litigation elsewhere. *Weber*, 811 F.3d 811 at 768.  Under Florida law, a permissive forum-selection clause "is 'essentially a 'consent' to jurisdiction or venue in the named forum and do[es] not exclude jurisdiction or venue in another forum.'" *OKTEX Utility Construction*, 2022 WL 785315, at *4 (quoting *Michaluk*, 164 So. 3d at 722) (quoting *Travel Express Investment Inc. v. AT&T Corp.*, 14 So. 3d 1224, 1226 (Fla. Dist. Ct. App. 2009)).

Here, the forum-selection clause provides "[t]he parties agree that any cause of action arising out of or relating to this Agreement shall be brought *exclusively* in a U.S. federal or Florida state court located in Duval County, Florida and each consents to

the court's personal and subject matter jurisdiction."  December 2020 Agreement

¶ 24 (emphasis added).  The plain meaning of the text in the parties' agreement

supports the defendant's interpretation.  Thus, based on its clear and unambiguous

language, the court concludes that this is a mandatory forum-selection clause.[12]  See

*Antoniazzi v. Wardak*, 259 So. 3d 206, 210 (Fla. Dist. Ct. App. 2018) ("Here the

forum selection clause provides:  'The place of performance, ***the exclusive jurisdiction***

for all legal action and ***the venue*** for legal proceedings . . . is the place . . . [.]'

(emphasis added).  Thus, the plain language of this contract expresses an

unmistakable intent to make the forum provision exclusive."); see also *Nelson v.*

*Wyndham Vacation Resorts, Inc.*, No. 5:19-CV-01425-OLG, 2020 WL 13015572, at *3

(W.D. Tex. May 13, 2020) ("[T]he contract states, in relevant part, '[t]his agreement

shall be governed exclusively by the laws and Courts of the State of Florida.' . . . The

phrase '*shall* be governed *exclusively* by the . . . Courts of the State of Florida' signifies

that it is a mandatory forum selection clause.") (emphasis in the original).

### iii.  Validity

The court finds that forum-selection clause is valid.[13]  "[L]ike federal law,

---

[12]      Even without the benefit of a choice-of-law analysis, the clause is clearly mandatory under Florida, Texas, or federal law.

[13]      The court will apply state law to determine the validity of the clause. See *KeyCity Capital*, 2022 WL 581146, at *4 n.11 ("There is some uncertainty in this circuit concerning the choice of law when determining the validity of the [forum-selection] clause. . . . Nevertheless, it seems that recent cases have moved toward applying state law."); see also *Fintech Fund*, 836 Fed. Appx. at 223; *OKTEX Utility*

(continued...)

'Florida law presumes that forum[-]selection clauses are valid and enforceable.'"
*OKTEX Utility Construction*, 2022 WL 785315, at *5 (quoting *Espresso Disposition*, 105
So. 3d at 594); see also *American Safety Casualty Insurance Company v. Mijares Holding
Company, LLC*, 76 So. 3d 1089, 1092 (Fla. Dist. Ct. App. 2011) ("Florida law
presumes that the forum selection clauses in contracts are valid and enforceable, and
a party seeking to avoid enforcement of such a clause must establish that
enforcement would be unjust or unreasonable."), *review denied*, 103 So. 3d 140
(2012).  Moreover, in Florida, "[c]ontracting parties have the right to select the
forum for prospective disputes."  *Baker v. Economic Research Services, Inc.*, 242 So. 3d
450, 452 (Fla. Dist. Ct. App. 2018) (citation omitted).

InVas seemingly combines its challenges to the validity and enforceability of
the forum-selection clause at issue in this case, arguing that the clause is invalid
because Florida is an improper venue, and that enforcement of the clause "would
contravene Texas' public policy."[14]  *See* Response to Motion to Transfer Venue at 12;

---

[13](...continued)
*Construction*, 2022 WL 785315, at *5.

[14]    The Fifth Circuit has noted that "we do not appear to have drawn [a]
distinction between validity and enforceability, instead seeming to treat those words
as synonyms in the forum-selection clause context.  Even in diversity cases, we have
often framed our analysis of such clauses by quoting [*M/S*] *Bremen* [*v. Zapata Off-
Shore Company*, 407 U.S. 1 (1972)]'s instruction that forum-selection clauses 'are
prima facie *valid* and should be enforced unless enforcement is shown by the resisting
party to be 'unreasonable' under the circumstances.'"  *Barnett*, 831 F.3d at 302
(quoting *International Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th
Cir. 1996) (emphasis added by the *Barnett* court)); see also *id.* ("Too, while
(continued...)

- 40 -

see generally *id*.  The court again is unpersuaded, however, by the legal analysis in support of these arguments.

### iv.  Scope

The court also must decide whether the forum-selection clause at issue applies to the types of claims asserted in the instant case.  InVas seeks a declaration that the restrictive covenants – "namely, the non-compete and non-solicit provisions" – in the December 2020 Agreement are unenforceable or, if enforceable, are overbroad. Petition at 5-6.  Neither InVas nor Zimmer Biomet contend that this dispute falls outside the scope of the clause, which applies to "*any* cause of action *arising out of or relating to* this Agreement . . . ."  December 2020 Agreement ¶ 24 (emphasis added). Morever, the language at issue in this case – "any cause of action arising out of or relating to this Agreement" – is sufficiently broad to cover the claims for declaratory relief InVas presses in the instant action.  See *OKTEX Utility Construction*, 2022 WL 785315, at *7 ("When . . . a forum-selection clause provides that it applies to any claim 'relat[ed] to' a contract, Florida courts determine the scope of its applicability by asking whether there is a 'significant relationship and clear nexus' between the claims and the contract.") (citation omitted).  Accordingly, the forum-selection clause

---

[14](...continued)
presupposing a 'valid' forum-selection clause, the Court in *Atlantic Marine* did not mention the word 'enforceability.'"); *J.V. & Sons Trucking, Inc. v. Asset Vision Logistics, LLC*, No. 1:20-CV-0163-H, 2020 WL 10458645, at *2 (N.D. Tex. Dec. 15, 2020) (Hendrix, J.).

at issue is applicable to the plaintiff's petition, and the dispute in question falls within the scope of the clause.

The court concludes that the forum-selection clause is mandatory, valid, and covers the scope of InVas's claims for declaratory relief; thus, the court will enforce the forum-selection clause unless InVas has met its heavy burden to establish that enforcement of the clause would be unreasonable under the circumstances.  See *Mitsui & Company*, 111 F.3d at 35.

### c.  Enforceability

In a diversity case such as this, federal law governs the enforceability of forum-selection clauses.  *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 32 (1988) (holding that "federal law . . . governs the District Court's decision whether to give effect to the parties' forum-selection clause . . . .").  Under federal law, a forum-selection clause in a written contract is *prima facie* valid and carries a "strong presumption of enforceability."  *Haynsworth v. The Corporation*, 121 F.3d 956, 966 (5th Cir. 1997), *cert. denied sub nom*. 523 U.S. 1072 (1998); see also *Mitsui & Company*, 111 F.3d at 35.  If the forum-selection clause at issue is clear, mandatory, and enforceable, the plaintiff's choice of forum "'merits no weight[.]'"  *Weber*, 811 F.3d at 767 (citing *Atlantic Marine*, 571 U.S. at 63); see also *Barnett*, 831 F.3d at 300 ("[B]y contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute arises.'") (quoting *Atlantic Marine*, 571 U.S. at 63). Instead, to overcome the presumption of validity and enforceability, the plaintiff

  
bears the "heavy burden" of demonstrating that enforcement of the forum-selection clause would be unreasonable under the circumstances.  *Mitsui & Company*, 111 F.3d at 35; see also *Atlantic Marine*, 571 U.S. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

In general, enforcement of a forum-selection clause is unreasonable under the circumstances only if:

> (1) [T]he incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state.

*Al Copeland Investments, L.L.C. v. First Specialty Insurance Corporation*, 884 F.3d 540, 543 (5th Cir. 2018) (quoting *Haynsworth*, 121 F.3d at 963) (internal quotation marks omitted); see also *M/S Bremen*, 407 U.S. at 15-18; *Mitsu*i, 111 F.3d at 35 (citation omitted).[15]  Also, in such cases, district courts should not consider the aforementioned private-interest factors.  *Weber*, 811 F.3d at 767.

---

[15]     While InVas's contentions do not address the negotiation process, by all indications, InVas is a sophisticated business entity and freely entered into the December 2020 Agreement.  Moreover, InVas does not argue that the forum-selection clause itself is invalid for overreaching.

InVas argues that "[t]ransfer in this case would be unreasonable because (1) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; (2) enforcement of the clause would contravene Texas' public policy and (3) Plaintiff will be deprived of being able to call key witnesses to this case and will be deprived of its day in court because of the inconvenience or unfairness of the selected forum."[16] Response to Motion to Transfer Venue at 12.

Zimmer Biomet contends InVas's "requested **remedy** of a declaratory judgment is still available in a Florida court and under Florida law . . . ." Reply in Support of Motion to Transfer Venue at 5-6 (emphasis in the original). The court agrees. "[I]t is the *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits." See *Weber*, 811 F.3d at 774 (emphasis in the original); see also *id*. ("[T]he fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek *some* relief.") (emphasis in the original); *Vital*

---

[16]     Because the court finds the forum-selection clause valid and enforceable, it need not consider all of InVas's arguments regarding unreasonableness. Under *Atlantic Marine*, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. And, while it may be inconvenient for InVas to prosecute this suit in Florida, it has not shown that such inconvenience was unforeseeable at the time the agreement was executed or that requiring it to prosecute an action for declaratory relief in Florida would be so manifestly and *gravely* inconvenient as to deprive it of its day in court.

*Pharmaceuticals, Inc. v. Alfieri*, No. 20-61307-CIV-SINGHAL/VALLE, 2022 WL
1450042, at *3-*5 (S.D. Fla. May 9, 2022) (discussing FLA. STAT. § 542.335);
*Alonso-Llamazares v. International Dermatology Research, Inc.*, 339 So. 3d 385, 393 (Fla.
Dist. Ct. App. 2022).  Additionally, the court has found that enforcement of the
forum-selection clause would not contravene public policy in Texas.  See discussion
*supra*.

InVas's arguments that the forum-selection clause is unenforceable are not
persuasive on the merits and do not meet its heavy burden to demonstrate that
enforcement of a valid forum-selection clause would be unreasonable under the
circumstances.  Thus, the court concludes that the forum-selection clause in this case
is reasonable and enforceable and sees no reason not to enforce the unambiguous
choice of forum and law clause included in the December 2020 Agreement.
Enforcing the forum-selection clause would not be unreasonable under the
circumstances of this case, nor is there any evidence of fraud or overreaching on the
part of Zimmer Biomet.  The forum-selection clause does not violate public policy.
Finally, there is nothing to suggest that the forum-selection clause is fundamentally
unfair or that Zimmer Biomet insisted on the clause in bad faith.  Accordingly, the
forum-selection clause is enforceable.

d.  Public-Interest Factors

Having found the forum-selection clause mandatory, valid, and enforceable, a
district court may consider arguments only about public-interest factors.  *Atlantic*

*Marine*, 517 U.S. at 64.  "[Public-interest] factors justify a refusal to enforce a forum-selection clause only in 'truly exceptional cases.'"  *Barnett*, 831 F.3d at 309 (quoting *Weber*, 811 F.3d at 776); see also *Atlantic Marine*, 517 U.S. at 64 ("Because [public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."); *Al Copeland Investments*, 884 F.3d at 546.

The public interest factors of "administrative difficulties flowing from court congestion"[17] and "the unfairness of burdening citizens in an unrelated forum with jury duty" are not mentioned by either party.

InVas generally posits that "Texas courts have a local interest in having localized controversies, as is the case here, decided at home."  Response to Motion to Transfer Venue at 13.  In response, Zimmer Biomet asserts that "[a]s a Florida-headquartered operating entity, [it] has an interest in having disputes litigated in Florida pursuant to the Florida forum-selection clause in the Parties' agreement."  Reply in Support of Motion to Transfer Venue at 2.  In addition, the forum-selection clause vests exclusive jurisdiction with Florida courts.  Because Texas and Florida have an equal interest in having this case decided at home, this factor is neutral.

---

[17]    *But see* https://www.uscourts.gov/statistics/table/c-1/judicial-business/2021/09/30 ("U.S. District Courts - Civil Cases Filed, Terminated, and Pending, by Jurisdiction - During the 12-Month Periods Ending September 30, 2020 and 2021") (favoring transfer).

The final public interest factors involve the ability of the court to apply the governing law and the avoidance of unnecessary conflicts of law. InVas contends that "Texas law must be followed regardless of whether this matter is heard in Texas or in a federal courthouse in Florida." Response to Motion to Transfer Venue at 10. In reply, Zimmer Biomet agrees that "[t]he district judge in Florida can determine if Texas law should apply over the chosen Florida law, and if it should, assess the validity of the [December] 2020 Agreement under Texas law." Reply in Support of Motion to Transfer Venue at 6. Both this district and the Middle District of Florida could apply Florida law or Texas law without any material difference in expertise, effort, or expense. See *Atlantic Marine*, 571 U.S. at 67-68 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia."); see also *Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 541 (W.D. Tex. 2007) ("[N]either party has demonstrated that the resolution of Plaintiffs' claims will involve any thorny or unusual issues of state law, and courts in both venues are more equally able to resolve any choice of law issues presented by Plaintiffs' claims."). This factor does not weigh in favor of either transferring or not transferring the case. Finally, because foreign law (*i.e.*, law from outside the United States) is not an issue in this case, this factor is irrelevant to this motion.

Upon consideration of all the equities, the court concludes that the factors supporting transfer to Florida outweigh those in favor of retaining venue in Texas. Moreover, any benefits are clearly outweighed by the forum-selection clause that the parties agreed to.  Because InVas did not meet its heavy burden to demonstrate that enforcement of a valid forum-selection clause the parties agreed to would be unreasonable under the circumstances and has not shown this case to be a "truly exceptional" or "unusual" case in which the application of public-interest factors outweigh transfer, the court grants Zimmer Biomet's motion to transfer venue of the case to the United States District Court for the Middle District of Florida, Jacksonville Division, under § 1404(a).  See *Atlantic Marine*, 571 U.S. at 59-60 ("[A] proper application of § 1404(a) requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'") (quoting *Stewart Organization*, 487 U.S. at 33).

## III.  CONCLUSION

For the above stated reasons, the plaintiff's motion to remand is **DENIED**, and the defendant's motion to transfer venue to the United States District Court for the Middle District of Florida, Jacksonville Division is **GRANTED**.  Pursuant to 28 U.S.C. § 1404(a), this case is hereby **TRANSFERRED** to the United States District Court for the Middle District of Florida, Jacksonville Division.

**SO ORDERED**.

September 28, 2022.

A. JOE FISH
**Senior United States District Judge**